UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SONJA GAIL LOCKHART and )
JERRY RANDALL LOCKHART )
in their capacities as co-Administrators )
of the Estate of Michael W. Lockhart, )
 )
    *Plaintiffs,* )
v. ) No. 1:07-cv-209
 ) *Edgar*
FUJI HUNT PHOTOGRAPHIC )
CHEMICALS, INC. )
 )
    *Defendant.* )

## MEMORANDUM

Defendant Fuji Hunt Photographic Chemicals, Inc. ("Fuji Hunt") moves to dismiss the claim of Plaintiffs Sonja Gail Lockhart and Jerry Randall Lockhart, in their capacities as co-Administrators of the Estate of Michael W. Lockhart ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [Court Doc. No. 3]. Plaintiffs oppose the motion to dismiss. [Court Doc. No. 7]. The court has reviewed the pleadings and the applicable law and concludes that Fuji Hunt's motion will be GRANTED.

    **I.    Background Facts**

Plaintiffs bring a claim for compensatory and punitive damages against Fuji Hunt for the wrongful death of their son, Michael W. Lockhart. [Court Doc. No. 1-2, Complaint]. Michael Lockhart worked for Fuji Hunt as an operator, and his work required his proximity to a photographic chemical distillation process in August of 2006. *Id.* The complaint alleges the following events occurred:

    5.    That on or about August 2, 2006, at about 8:00 a.m., the Defendant FUJI

HUNT . . . began the distillation of more than eight hundred (800) gallons of a liquid called OXAD Mother Liquor in a one thousand (1,000) gallon tank with the intent to recover, by distilling off, a compound call PYM (methyl pivaloylacetate) from the mother liquor. . . .

6. That, upon information and belief, the process which the Defendant FUJI HUNT . . . began on August 2, 2006, was developed by one person and approved by several management personnel without having consulted with any operators or shift leaders who were also not consulted on the development of any hazard analysis for the operation;

7. That, upon information, the written distillation process procedure . . . was deviated in that the temperature was raised beyond any temperature listed in the procedure (and beyond a safe temperature level) and no change analysis was performed when temperatures in the distillation were raised to unsafe levels;

8. That, upon information and belief, no effective safety change analysis of the newly-developed process, including its operating procedures, was conducted before this new distillation process was performed;

9. That, upon information and belief, the Defendant. . . did not provide the operators and shift leaders with training in the procedure before it was utilized;

10. That, upon information and belief, the written work practice for the distillation . . . did not have instructions for dealing with emergency situations such as the development of a runaway exothermic reaction in the distillation tank;

11. That, upon information and belief, the written work practice for the distillation, . . . was not effectively safe and no safe upper temperature limit for the OXAD ML was provided in the procedure for the last phase of the distillation;

12. That, upon information and belief, no job or expert hazard analysis was performed before the distillation so as to identify and control the potential hazards in the OXAD ML distillation process . . .

14. That, upon information and belief, the Defendant . . . intentionally disregarded other known hazards which were recognized by the industry, its own representatives and common sense when it proceeded with the distillation process;

15. That, at about 4:42 a.m. on August 3, 2006, the manway lid on the top of the distillation tank blew off from over pressure inside the tank which was caused by a runaway chemical action. The flammable gases which exploded emanated from the manway lid opening [sic] caused serious and painful burns to the decedent Michael W. Lockhart who was working about twenty-five (25) feet from the distillation tank;

16. That, after the explosion, emergency personnel responded to provide medical treatment to the decedent Michael W. Lockhart who was subsequently transported via ambulance to a local hospital where he remained in intensive care for three (3) days before succumbing to the extremely [sic] injuries which he incurred . . .

Complaint, ¶¶ 5-16.

Plaintiffs assert that the facts alleged in the complaint demonstrate that Fuji Hunt "intentionally disregarded" procedures that created hazards for its employees. Complaint, ¶ 19. Plaintiffs further contend that Fuji Hunt's "decision to disregard known hazards was motivated by its desire to reduce its expenses and, therefore, to increase its own profits at the expense of the operators involved in the distillation process." Complaint, ¶ 20. Plaintiffs claim that Fuji Hunt's "intentional disregard for the safety" of its employees created a hazard that rendered Michael Lockhart's death not an accident, and therefore not covered by the Tennessee Workers' Compensation Law, Tenn. Code Ann. §§ 50-6-100 *et seq*.

Defendant Fuji Hunt seeks to dismiss Plaintiffs' claim because the facts alleged do not fit within the intentional tort exception to the Tennessee's Workers' Compensation Law.

**II.     Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)). The Supreme Court has recently explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, __ U.S. ___, 127 S.Ct. 1955, 1969 (2007). The complaint "must contain either direct or inferential allegations

with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## III. Analysis

Tennessee's Workers' Compensation Law contains an exclusivity provision that states:

> The rights and remedies granted to an employee subject to the Workers' Compensation Law, compiled in this chapter, on account of personal injury or death by accident, . . . shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death.

Tenn. Code Ann. § 50-6-108(a). However, Tennessee courts have recognized an intentional tort exception to the Workers' Compensation Law. For example, in *Valencia v. Freeland and Lemm Constr. Co.*, the Tennessee Supreme Court examined the intentional tort exception to the Workers' Compensation Law. 108 S.W.3d 239 (Tenn. Sup. Ct. 2003). It considered whether the intentional tort exception requiring an "actual intent" to injure was satisfied by employer behavior that was "substantially certain" to cause injury or death. *Id.* at 240. The court held that even conduct that was substantially certain to cause injury or death did not satisfy the intentional tort exception. *Id.* at 241. The court noted: "the provisions of the workers' compensation statute are the exclusive remedy for employees to obtain relief from employers for injuries occurring in the course and scope of employment, unless 'actual intent' to injure has been established." *Id.*

In *Valencia* a construction trench in which the employee was working collapsed and caused his death. 108 S.W.3d at 241. The employer had twice been cited prior to the employee's death for violating safety regulations. *Id.* However, the employer continued to ignore the safety regulations and constructed its trenches without the requisite sloping or

"trench-boxes." *Id.* The plaintiff's estate sued the employer for wrongful death, misrepresentation, and negligence and amended the complaint to allege "actual intent" to injure. *Id.* In affirming the trial court's dismissal of the claims, the court noted that "[w]e would radically depart from precedent were we to hold that an employer is exposed to tort liability if its conduct made injury substantially certain. This we cannot do." *Id.* at 243.

The *Valencia* court relied on *Mize v. Conagra, Inc.*, a decision by the Tennessee court of appeals in making its determination. 734 S.W.2d 334 (Tenn. Ct. App. 1987). In *Mize* an explosion in the employer's facility caused the deaths of employees working there. *Id.* at 335. The explosion resulted from violations of Tennessee's workplace safety act. The plaintiffs claimed that the defendant's violation of safety standards constituted an intentional tort that was excluded from the Workers' Compensation Law. *Id.* at 336. The court disagreed. It noted:

> Our cases have established a breach of an employer's duty to provide a safe place to work is not equated with an actual intent to injure nor intentional tortious conduct. . . . This court, in *King*, quoting from 2A Lawson, *Workmen's Compensation Law*, § 68.13 at 13-5 (1982), explained:
> Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of *general intentional injury* . . . . Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully and unlawfully violating a safety statute, this still falls short of the kind of *actual intention* to injure that robs the injury of accidental character.

*Mize*, 734 S.W.2d at 336 (quoting *King v. Ross Coal Co., Inc.*, 684 S.W.2d 617, 619 (Tenn. Ct. App. 1984)).

Other Tennessee and federal courts have confirmed the meaning of the intentional tort

exception under Tennessee law. *See e.g., Forsythe v. Gibbs*, No. M2001-02055-coa-R3-cv, 2002 WL 1869415 (Tenn. Ct. App. Aug. 15, 2002) (finding plaintiff employee limited to workers' compensation remedy despite fact that employer injured him in intentional horseplay); *Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993) (plaintiff employees' claims against employer for fraudulently concealing hazardous nature of chemicals were barred by exclusivity provisions of Tennessee's workers' compensation statute); *Gonzales v. Alman Const. Co.*, 857 S.W.2d 42 (Tenn. Ct. App. 1993) (reversing trial court's refusal to dismiss plaintiff's claim for common law tort based on injury caused by explosives, despite employer's awareness of and intentional violation of safety rules); *King v. Ross Coal Co., Inc.*, 684 S.W.2d 617 (Tenn. Ct. App. 1984) (workers' compensation was exclusive remedy for plaintiff's injury despite fact that employer was aware of and ignored safety concerns); *Cooper v. Queen*, 586 S.W.2d 830 (Tenn. Ct. App. 1979) (affirming trial court's dismissal of plaintiff's tort claim arising from death attributed to employer's criminal negligence); *Schultz' Estate v. Munford, Inc.*, 650 S.W.2d 37 (Tenn. Ct. App. 1982) (holding that employer's intentional operation of store in negligent manner did not satisfy intentional tort exception to workers' compensation statute); *Coltraine v. Fluor Daniel Facility Service Co.*, 1994 WL 279964 (Tenn. Ct. App. 1994) (affirming defendant's motion to dismiss and finding that plaintiff employees must show actual intent to injure to satisfy intentional tort exception to workers' compensation law); *Rainer v. Westinghouse Elec. Corp.*, No. 94-5642, 65 F.3d 169, 1995 WL 510050 (6th Cir. Aug. 28, 1995) (affirming district court's dismissal of fraud and misrepresentation claims alleging knowing and intentional exposure of plaintiff employees to asbestos for failure to meet intentional tort exception to Tennessee workers' compensation laws).

Plaintiffs' allegations amount to nothing more than perceived safety violations by Fuji Hunt. There are no facts that appear in the complaint from which the court can discern any actual intent by Fuji Hunt to injure Michael Lockhart. At most, Plaintiffs allege that Fuji Hunt intentionally violated safety regulations pertaining to the distillation of its chemicals. Tennessee courts have confirmed in numerous cases that even intentional, knowing, and willful violations of safety regulations do not fit the intentional tort exception to Tennessee's Workers' Compensation Law. *See e.g., Valencia*, 108 S.W.3d at 241; *Mize*, 734 S.W.2d at 336; *Gonzales*, 857 S.W.2d at 44; *King*, 684 S.W.2d at 618. Plaintiffs' arguments pertaining to public policy and their reliance on cases defining the scope of compensable injuries do not address Fuji Hunt's arguments regarding the narrowness of the intentional tort exception to workers' compensation in Tennessee. This court is bound by Tennessee courts' interpretation of the state's workers' compensation law.

Plaintiffs' claim is without merit and must be DISMISSED. Plaintiffs may, of course, be entitled to benefits under Tennessee's Workers' Compensation Law. They are free to work with Fuji Hunt regarding the extent of its liability or to file a claim to a benefit review conference pursuant to the Tennessee Workers' Compensation Law, Tenn. Code Ann. § 50-6-225.

**IV.     Conclusion**

As summarized *supra*, Plaintiffs have not alleged an actual intent to injure Michael Lockhart by Fuji Hunt; therefore, their wrongful death claim must be DISMISSED WITH PREJUDICE. Plaintiffs' remedies for the death of Michael Lockhart remain exclusively covered

by Tennessee's Workers' Compensation Law.

A separate judgment will enter.

        */s/ R. Allan Edgar*
        R. ALLAN EDGAR
   UNITED STATES DISTRICT JUDGE